IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WHITNEY RICH, on behalf of C.W., | * |
| Plaintiff, | * |
| v. | * Case No. 1:23-cv-00705-SAG |
| DENNISON PLUMBING & HEATING, et al., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This case involves serious burn injuries sustained by a young infant in a whirlpool bathtub in a rental property in Frederick, Maryland. Pending before this Court are two motions for summary judgment: one filed by Defendant Marilyn L. Hess (nee Dennison) Individually and as Trustee of the Marilyn L. Dennison Trust of 2001 U.A.D. and the Herbert M. Dennison Trust of 2001 U.A.D. (collectively "the Landlord Defendants") and one filed by Defendant Dennison Plumbing & Heating ("the Plumbing Defendant"). ECF 38, 39. This Court has reviewed the motions and Plaintiff's oppositions, ECF 42, 43, along with the related exhibits. This Court also entertained argument at a motions hearing on December 2, 2024. Plaintiff subsequently filed a motion for leave to file a supplemental brief, ECF 46, which Defendants opposed, ECF 47. After full consideration, for the reasons set forth below, Plaintiff's motion to file a supplemental brief, ECF 46, will be GRANTED.[1] The Plumbing Defendant's motion, ECF 39, will also be GRANTED and the Landlord Defendants' motion, ECF 38, will be GRANTED as to Counts I and II and DENIED as to Count IV.

---

[1] This Court has considered the arguments made in Plaintiff's supplemental brief, ECF 46-2, but deems them unpersuasive for the reasons described herein.

**I.   FACTUAL BACKGROUND**

This case arises out of an incident in March of 2008, in which a very young infant, C.W., was placed on her back in an empty whirlpool bathtub by her mother, Plaintiff. One of the infant's young siblings (who were ages 4 and 2 at the time) turned on the hot water in the tub while Plaintiff briefly exited the room. The water caused the infant to suffer second- and third-degree burns and require extensive medical care, continuing to the present day. Plaintiff alleges that the Landlord Defendants and Plumbing Defendant are liable for C.W.'s injuries because the excessively hot water temperature in the rental property resulted in the burns. ECF 3.

Defendants acknowledge that there are factual disputes relating to the underlying incident, including whether Plaintiff ever informed Defendant Hess that she noticed an issue with excessively hot water in the rental property. Defendants' motions for summary judgment, however, are premised on excluding the testimony of the only expert witness Plaintiff has designated: Jason S. Kiddy, Ph.D. This Court will begin, therefore, with summarizing Dr. Kiddy's qualifications, report, and deposition testimony.

Dr. Kiddy earned degrees in physics, mechanical engineering, and aerospace engineering. ECF 42-13. He has worked in engineering since 1996, holds several patents, and belongs to professional associations including the American Society of Mechanical Engineers, the National Association of Fire Investigators, and the National Fire Protection Association. *Id.* He has an extensive number of technical publications, though none of those on his CV appear to be plumbing-related. *Id.* at 5.[2] His CV lists twenty-one "areas of expertise," ranging from "hunting equipment" to "premise liability" to "manufacturing processes." *Id.* at 2.

---

[2] For all pincites, this Court uses the ECF page numbers in the header at the top of the page rather than the page numbers in the footer at the bottom of the page or the page numbering in deposition transcripts.

In his expert report, Dr. Kiddy reached the following eight opinions "to a reasonable degree of scientific and engineering certainty:"

1. The industry has settled on 120°F as the desired hot water temperature since at least 1993, 15 years prior to [C.W.'s] incident.
2. Although an ASSE 1016 compliant valve, which is required on all shower installations, would have been adequate and would have protected [C.W.] from her burns, it was not specifically required by the governing codes.
3. Based on the overall configuration of the subject plumbing system, specifically that the mixing of the hot and cold water occurs within the sidewall of the bathtub, a TAFR valve installed on the hot water supply prior to the bathtub would have been the most practical approach to limiting the bathtub temperature.
4. The plumbing codes in effect at the time of the original construction in 1995 clearly recognize the hazard of hot water temperatures in excess of 120°F.
5. The plumbing codes in effect at the time of the accident and all subsequent codes require water temperature limiting devices with a maximum allowable water temperature of 120°F for bathtubs without showers and whirlpool tubs.
6. The defendants should have recognized the hazard created by the uncontrolled hot water temperature leading to the subject bathtub. The defendants had the capability and know-how to install a temperature limiting valve to bring the bathtub up to plumbing code and to provide a safe environment for their tenants. Despite having the knowledge and skills to remedy the hazard, the defendants chose not to do so thereby ultimately resulting in [C.W.'s] injuries. This failure constitutes a breach of the standard of care in which the defendants owed [Plaintiff] and her children.
7. If no other means exist to provide scald protection, lowering the temperature of the hot water is an option, especially in the short term while other code-compliant measures are put in place. However, the water heater temperature control should never be considered as a permanent solution.
8. If the water temperature was controlled and limited to 120°F, [Plaintiff] would have had approximately eight minutes to discover that the water had been turned on and to prevent [C.W.'s] injuries.

ECF 42-10 at 10-11. The report indicates that Dr. Kiddy relied upon two pre-construction versions of the BOCA National Plumbing Code (from 1990 and 1993) and then two post-incident versions of the ICC International Plumbing Code (from 2009 and 2018). *Id.* at 5-6. The report acknowledges that neither of the pre-construction codes "specifically address bathtubs or whirlpool bathtubs. Nor do they address TAFR or temperature limiting valves." *Id.* at 8. The report relies upon a study of thermal injury by A.R. Moritz and F.C. Henriques to provide a table purporting to indicate the

3

amount of time it would take for second degree burns with exposure to water at various temperatures. *Id.* at 9-10. The report acknowledges that the table does not address the time it would take for an infant to sustain various burning injuries. *See id.* at 9 ("likely even lower for an infant with thinner skin"). Dr. Kiddy's report also referenced a test performed by "the Frederick police department" which "obtained results of 132 +/- 3°F (129°F to 135°F)." *Id.* at 9.[3]

At his deposition, Dr. Kiddy explained that he has had a couple of professional cases involving hot water heaters, one involving a "sooting event" where the exhaust from the heater was dirty and one dealing with the installation of a hot water heater and the resulting impact on plumbing in the area. ECF 38-7 at 6-7. He explained that he has not had any involvement with temperature control of whirlpool tubs, and that this was the first case where he evaluated the temperature control of whirlpool tubs or hot water heaters. *Id.* at 7. He testified that the "temperature measurement that was made by the county…was useful in my analysis." *Id.* at 12. He also explained that his task was to identify whether the plumbing "and whether the defendants were negligent in allowing the plumbing to be in the condition that it was in" contributed to C.W.'s injuries. *Id.*

## II.    MOTION TO EXCLUDE EXPERT TESTIMONY

### A. Legal Standards

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. A qualified expert may give testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

---

[3] The police report appears at ECF 42-4. In relevant part, it describes that on October 10, 2008, Frederick County Officer Gilbert Curtis Lege "contacted [Plaintiff] at her residence. She advised that yes the gas was turned back on in the residence . . . I checked the temperature of the hot water. I got a reading of 132 degrees plus or minus three degrees." *Id.* at 6.

>   (c) the testimony is the product of reliable principles and methods; and
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In essence, the trial court must ensure the proposed expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). In *Daubert*, the Supreme Court provides five non-exhaustive factors a court may weigh in making this assessment: (1) "whether a theory or technique . . . can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error," (4) "the existence and maintenance of standards controlling the technique's operation," and (5) whether the technique or theory has gained "general acceptance." *Daubert*, 509 U.S. at 592-94; *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 452 (4th Cir. 2010). However, ultimately, the inquiry is "a flexible one" and relevant factors can vary with the needs of each case. *Daubert*, 509 U.S. at 594.

For the proffered evidence to be sufficiently reliable it "must be derived using scientific or other valid methods" and not based on mere "belief or speculation." *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 340 (D. Md. 2011) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). The court's analysis focuses on experts' methods, not their conclusions, but an expert opinion that relies on "assumptions which are speculative and are not supported by the record," is inadmissible. *Tyger Const. Co. Inc. v. Pensacola Const. Co.,* 29 F.3d 137, 142 (4th Cir. 1994); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). For the proffered opinion to be relevant, it "must be 'sufficiently tied

5

to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Casey*, 823 F. Supp. 2d at 341 (quoting *Daubert*, 509 U.S. at 591). Expert testimony "is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Anderson v. Home Depot U.S.A., Inc.*, Civ. No. GJH-14-2615, 2017 WL 2189508, at *4 (D. Md. May 16, 2017) (quoting *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993)).

The proponent of the expert testimony bears the burden of establishing its admissibility, or "coming forward with evidence from which the trial court could determine that the evidence is admissible under *Daubert*." *Id.* at *3 (quoting *Main St. Am. Grp. v. Sears, Roebuck, & Co.*, Civ. No. JFM-08-3292, 2010 WL 956178, at *3 (D. Md. Mar. 11, 2010)); *see also Casey*, 823 F. Supp. 2d at 340; *Daubert*, 509 U.S. at 592 n.10 (explaining admissibility must be established by a "preponderance of proof").

In determining the admissibility of expert testimony, the court considers two "guiding, and sometimes competing, principles." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). On the one hand, Rule 702 was "intended to liberalize the introduction of relevant expert evidence," and the court need not ensure the expert's proposed testimony is "irrefutable or certainly correct." *Id.* (explaining that admissible expert testimony can still be vigorously tested before the jury by "cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" (quoting *Daubert*, 509 U.S. at 596)). On the other hand, "due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" *Id.* (quoting *Daubert*, 509 U.S. at 595). The court must determine whether the disputed expert testimony "has a greater potential to mislead than to enlighten." *Id.* If so, the testimony should be excluded. *Id.*; *see also Casey*, 823 F. Supp. 2d at 341 (noting such testimony would be barred by Federal Rule of Evidence 403).

**B. Analysis**

Three distinct issues have been raised with respect to Dr. Kiddy's testimony. First, Defendants contend that Dr. Kiddy improperly relied on the unreliable water temperature reading from the police report to support his opinion that the water temperature at the time of the incident exceeded 120 degrees. ECF 38-1 at 4-5. Second, Defendants contend that Dr. Kiddy admitted that he has no evidence of a code violation at the residence, and that his testimony regarding purportedly applicable "standards" is inherently unreliable because the standards he cites do not apply to whirlpool tubs. *Id*. at 6-7. Third, as they argued at the motions hearing, Defendants contend that Dr. Kiddy lacks the requisite knowledge, skill, and experience to provide testimony establishing the duties owed by plumbers to tenants at residential premises. *Id*. at 6 n.1. This Court will address each argument in turn.

First, with respect to the water temperature reading, the police report, ECF 42-4, as an out-of-court statement, is hearsay and the author is unavailable to testify. Plaintiff contends, in her supplemental filing, that the police report is admissible under the exception set forth in Federal Rule of Evidence 803(8) for public records. ECF 46-2 at 2-3. Rule 803(8) provides for the admission of:

> A record or statement of a public office if:
> (A) it sets out:
>     (i) the office's activities
>     (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law enforcement personnel; or
>     (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Even assuming that the provisions of Rule 803(8) (A) are met, Defendants have shown that the circumstances indicate "a lack of trustworthiness." Defendants correctly observe that the report

provides no information about the equipment used, the calibration of the equipment, the methodology used to take the temperature (including where the sample was taken or the length of time the water ran before measuring), or the number of samples taken. ECF 38-1 at 13-14. And Officer Lege's temperature reading was taken almost seven months after the incident, following a period of time in which the gas at the property had been turned off. This Court concludes that those facts demonstrate a "lack of trustworthiness" sufficient to exclude the police report from admissibility under the hearsay exception in Rule 803(8).

Moreover, while expert witnesses are allowed to rely on hearsay evidence under Rule 703, the evidence must be of a type that would be reasonably relied upon by experts in the field. The temperature reading here would not meet that requirement, for all the reasons described above. It is simply too farfetched to believe that a temperature reading taken seven months after the incident using unknown methodology and instrumentation represents an accurate assessment of the water temperature in the whirlpool tub back in March, 2008. Any portion of Dr. Kiddy's testimony relying on that inadmissible temperature reading is itself inadmissible.[4]

Second, this Court agrees that Dr. Kiddy's opinions regarding applicable codes and standards are not methodologically sound. He opines that, "The industry has settled on 120°F as the desired hot water temperature since at least 1993, 15 years prior to [C.W.'s] incident," and that "[t]he plumbing codes in effect at the time of the original construction in 1995 clearly recognize the hazard of hot water temperatures in excess of 120°F." ECF 42-10 at 7. Those statements are not supported by the code provisions he cites. Setting aside the legitimate issue of whether the codes Dr. Kiddy cites were even applicable in Frederick County, Maryland at the time of the unit's

---

[4] This Court notes that none of Dr. Kiddy's eight opinions directly reference the officer's temperature reading, although his opinions clearly assume that the water temperature exceeded 120°F at the time of the incident. *See* ECF 42-10 at 10-11.

construction, the BOCA provisions he cites refer to showers, not bathtubs or whirlpool tubs. *See id*. at 5. While Dr. Kiddy certainly cites to later codes that extended 120°F requirements to tubs and whirlpools, *see id*. at 6, he has no evidence that those codes imposed any legal requirement on Defendants. There is no evidence that Defendants made repairs or improvements to the whirlpool tub or the unit's plumbing system since the original construction in 1995. Dr. Kiddy's assessments about what the industry "settled on" or what the plumbing codes "recognized" are not tied to any scientific method, industry standard, or factual premise. *See id.* at 7, 10. Such *ipse dixit* reasoning cannot be the basis for an admissible expert opinion. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (quoting *General Electric v. Joiner*, 522 U.S. 136, 146 (1997)).

Finally, Dr. Kiddy's CV reflects that he has the knowledge, skill, and experience to serve as an expert witness in certain areas relating to mechanical engineering, aerospace engineering, and physics. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989) ("[O]nly experts qualified by 'knowledge, skill, experience, training, or education' may submit an opinion." (quoting Fed. R. Evid. 702)). However, his CV claims twenty-one "areas of expertise," ECF 42-13. Merely listing general topics as "areas of expertise" does not automatically qualify a person to serve as an expert. That warning is particularly apt when claimed "areas of expertise" are as broad as "Codes and Standards" or "Warnings and Instructions." *Id.* Here, while Dr. Kiddy claims generally to have an area of expertise in "Plumbing/Gas Equipment," closer examination reflects that he has not worked as a plumber or obtained training as a plumber. *See id*. He lacks specific knowledge, skill, experience, training, or education in residential plumbing and the duties owed by plumbers and landlords that would be relevant in this case. Moreover, the "codes and standards"

he cites in his report do not suggest use of a reliable methodology to reach his conclusions about industry standards. *See* Fed. R. Evid. 702(c)-(d); *see also JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 322 (D. Md. 2017) ("Expert testimony rooted in subjective belief or unsupported speculation does not suffice." (quoting *Zuckerman v. Wal–Mart Stores E., L.P.*, 611 F. App'x 138, 138 (4th Cir. 2015))). As a result of his lack of credentials in the relevant subject matter and the lack of adequate foundation for his opinion testimony, Dr. Kiddy's opinions must be excluded.[5]

## III. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Defendants, as the moving party, bear the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad,* 823 F. Supp.2d 334, 348 (D. Md. 2011). If Defendants establish that there is no evidence to support Plaintiff's case, the burden then shifts to Plaintiff to

---

[5] The majority of Dr. Kiddy's eight opinions are not relevant to establishing duty, breach, or causation. Opinions 1 and 4, as described above, lack a basis in the codes and standards Dr. Kiddy cites. *See* ECF 42-10 at 10. Opinions 2, 3, and 7 are simply irrelevant as they discuss potential mechanisms for lowering water temperature without providing any basis for a duty owed by Defendants to do so. *See id.* Opinion 5 is irrelevant also because it discusses codes that were not in effect at the time of construction in this case. *Id.* Opinion 6 talks about the "knowledge," "skills," "capability" and "know-how" possessed by Defendants as licensed plumbers, but then inexplicably conflates the technical ability to take certain actions with a duty to do so. *Id.* And Opinion 8, about the length of time it would take water at 120 degrees to burn C.W., is well outside Dr. Kiddy's expertise, even assuming the twenty-one "areas of expertise" he cites. *See id.* at 11. In fact, he concedes elsewhere in his opinion that it could take less time to burn an infant with thinner skin. *Id.* at 9.

proffer specific facts to show a genuine issue exists for trial. *Id*. Plaintiff must provide enough admissible evidence to "carry the burden of proof at trial." *Id.* at 349 (*quoting Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for Plaintiff. *Id*. at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Casey*, 823 F. Supp. 2d at 349.

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. Plaintiff "must produce competent evidence on each element of his or her claim." *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). If Plaintiff fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Casey*, 823 F. Supp. 2d at 348-349. In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B. Analysis

Plaintiff's Complaint has three counts remaining: negligence, premises liability, and breach of lease. The negligence claim is asserted against both the Landlord Defendants and the Plumbing Defendant, while the other two claims are asserted against the Landlord Defendants only. ECF 3 at 5-11, 14-17. This Court notes that the Landlord Defendants' argument for summary judgment, essentially, is that without expert testimony from Dr. Kiddy, Plaintiff cannot prove the standard of

11

care required to establish either a duty of care or a breach of such duty. ECF 38-1 at 15. Defendants' motions do not, however, make any particularized argument for dismissal of Plaintiff's breach of lease claim. No expert testimony or other standard of care evidence is required for such a claim. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001); *Noel v. PACCAR Fin. Corp.*, 568 F. Supp. 3d 558, 569 (D. Md. 2021). Under Maryland law, the elements of a claim for breach of contract are "contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)). This Court is unpersuaded, then, that the legal standards for all three of Plaintiff's claims are sufficiently similar to justify summary judgment on Plaintiff's breach of lease claim solely based on the arguments raised in the Landlord Defendants' motion. That motion therefore will be denied as to Count IV and addressed as to Counts I and II below.[6]

### 1. Negligence Claim against the Plumbing Defendants

Under well-established Maryland negligence jurisprudence, a properly pleaded claim of negligence includes four elements. Specifically, a plaintiff must show 1) that defendant owed a duty to protect the plaintiff from injury, (2) that defendant breached that duty, (3) that defendant's breach of the duty proximately caused the loss or injury suffered by the plaintiff, and (4) that the plaintiff suffered actual loss or injury. *See Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1049

---

[6] While this Court need not address this issue given the Landlord Defendants' failure to make particularized arguments for summary judgment on the breach of lease claim, it notes that the parties will need to grapple with whether personal injury damages are recoverable as consequential damages in a contract-based claim. Plaintiff's complaint does not seem to seek recovery for more traditional measures of damages sustained in a breach of lease, such as return of rent. *See* ECF 3 at 14-17.

(Md. Ct. Spec. App. 2011). Here, without the testimony of Dr Kiddy, Plaintiff offers no expert testimony to establish the standard of care owed by a plumber. In *Schultz v. Bank of America, N.A.*, 990 A.2d 1078, 1086 (Md. 2010), the Maryland Supreme Court explained, "Where the plaintiff alleges negligence by a professional, expert testimony is generally necessary to establish the requisite standard of care owed by the professional." *Id.* (citing *Rodriguez v. Clarke*, 926 A.2d 736, 755 (Md. 2007)).

Plaintiff argues that she can employ the testimony of Defendant Hess and her son, who are licensed plumbers, to establish the standard of care. But the testimony Plaintiff desires to elicit is barred by Federal Rule of Evidence 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) Rationally based on the witness's perception;
> (b) Helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) Not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Here, Plaintiff and her son have not been designated as experts. Neither testified as to the standard of care plumbers would owe, either as to the installation of a hot water system or whirlpool tub in 1995 or to the subsequent maintenance of such a system. To the extent that the son answered a hypothetical question posed to him during deposition about a duty owed by a plumber informed of a safety issue by a residential tenant, his answer to that hypothetical would constitute impermissible opinion testimony under Rule 701.

Finally, Plaintiff asserts that she does not need expert testimony to establish the relevant standard of care in this circumstance. ECF 42 at 11-14. She relies on *Rebert v. Brook Furniture Rental, Inc.*, No. 8:20-CV-00067-GLS, 2021 WL 4339130 at *12 (D. Md. Sept. 23, 2021), to argue that no expert testimony is required "where the alleged negligence falls within the ken of the

13

average juror." *See* ECF 42 at 12. The *Rebert* Court cites *Schultz*, in which the Maryland Supreme Court acknowledges that expert testimony is not required where "the alleged negligence is so obvious that the trier of fact could easily recognize that such actions would violate the applicable standard of care." 990 A.2d at 1087. As examples, the *Schultz* Court cited "cases where a dentist extracts the wrong tooth, a doctor amputates the wrong arm or leaves a sponge in a patient's body, or an attorney fails to inform his client that he has terminated his representation of the client." *Id.*

This case does not present anything close to the degree of obvious negligence required to vitiate the standard requirement of expert testimony. The factfinder in this case will require an understanding of the scope of a plumber's duty to investigate a complaint of excessively hot water made by a residential tenant. That scope is not something within the understanding of a common layperson. It is not, therefore, akin to understanding that a doctor violates his duty of care when he removes the wrong tooth or leg. Expert testimony would be required to establish the requisite standard of care owed by a plumbing professional. Without such admissible testimony, the Plumbing Defendant's motion for summary judgment, ECF 39, must be granted.

**2. Claims against Landlord Defendants**

"Premises liability is based on common-law principles of negligence, so a plaintiff must establish the four elements required in any negligence action." *Macias v. Summit Mgmt., Inc.*, 220 A.3d 363, 375 (Md. 2019) (citing *Troxel v. Iguana Cantina, LLC*, 29 A.3d 1038, 1048 (Md. Ct. Spec. App. 2011)). Thus, both the negligence and premises liability claims against the Landlord Defendants are governed by the familiar "duty-breach-causation-damages" standard described above.

The duty that is owed by a property owner is determined by the injured person's legal status at the time of the incident. *See Troxel*, 29 A.3d at 1049-50. Here, it is clear that the parties had a

landlord/tenant relationship. The general rule is that a landlord is not liable for injuries caused by defects or dangerous conditions in a leased premises because the landlord "has parted with control" upon executing the lease. *Marshall v. Price*, 162 Md. 687, 689 (Ct. App. 1932) ("The law is well settled that, when the owner has parted with his control, the tenant has the burden of the proper keeping of the premises, in the absence of an agreement to the contrary . . ."). There is an exception when a landlord knows of a hidden dangerous condition and the tenant does not, but that is inapplicable here because Plaintiff expressly asserts that she discovered the excessively hot water before the incident occurred and informed her landlord. ECF 42 at 2. There is also an exception to the rule of non-liability where the landlord has agreed to make certain repairs or improvements or has negligently repaired the premises, but here there is no evidence of either. Plaintiff merely avers that she advised Defendant Hess of what she believed to be excessively hot water on one or two occasions, and Defendant Hess took no action in response. *Id*.

While Plaintiff seems to argue here that the Landlord Defendants' coincidental training as plumbers alters the duty they owed to her as their tenant, Plaintiff cites no case law substantiating an enhanced duty. Plaintiff offers no expert testimony from a property manager or experienced landlord to establish why the Landlord Defendants would owe her a duty in these circumstances. Landlords are not general insurers of their tenants' safety, and there are necessary items in homes (such as stovetops and electrical sockets) that can pose an inherent danger when used without adequate care. Ultimately, in the absence of evidence to establish an exception to the general rule that a landlord is not liable to a tenant for a known dangerous condition, Plaintiff has not established a duty owed or a breach of duty. Summary judgment must be granted in favor of the Landlord Defendants as to Counts I and II.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to File Supplemental Brief, ECF 46, will be GRANTED. The Plumbing Defendant's Motion for Summary Judgment, ECF 39, is GRANTED and judgment will be entered in favor of Defendant Dennison Plumbing & Heating against Plaintiff. The Landlord Defendants' Motion for Summary Judgment, ECF 38, will be GRANTED as to Counts I and II and DENIED as to Count IV. A separate order is filed herewith.

Dated: January 7, 2025

/s/
Stephanie A. Gallagher
United States District Judge